Good afternoon, Your Honors, and may it please the Court. My name is Diego Aviles, and I, along with Evangeline Abreu, represent the Petitioner, Mr. Moreno. With the Court's permission, I'd like to reserve two minutes for rebuttal. How many minutes? Two minutes. Your Honors, today's case is about a man that has lived in the country for 33 years, and he arrived at the age of one. In 2007, he pled guilty to a Nevada forgery and received a suspended sentence. Years later, after turning himself for a speeding ticket, he is now facing the much more serious consequence of deportation, for an offense of which he received only probation. Today, Mr. Moreno is arguing that he is not removable as an aggravated felon for three reasons. One, that the Nevada Right Statute, Section 205.090, is overbroad. Two, that the Nevada Right Statute is not divisible. And three, that the immigration judge violated his due process rights by failing to adequately develop the record. When looking at the first point, it's important to analyze the definition section in 205.085, something the immigration judge and the BIA failed to do. When we look at the definition section, we see that the Nevada Right Statute is overbroad, namely in three ways. First, it allows for the commission of forgery by the use of genuine documents. Two, it allows for forgery to be through the obliteration of a document. And three, it allows for an intent other than an intent to defraud. Now, this court and the government has acknowledged that at the core of generic forgery offense is the false making of a document. Absent from that generic definition is the ability to place together or connect together the whole or several parts of genuine instruments to constitute forgery. This is exactly what the Nevada Right Statute allows to do under the definition section, and therefore falls outside the scope of a generic forgery offense. When we look at the second reason, the word obliterate, as defined in Black's Law Dictionary, it's to destroy or remove all traces of. Also absent from the generic definition is this ability to destroy a document. This does not create a false document, nor is it an alteration of a document. And the third reason, under the intent to defraud, this statute includes the intent to prejudice and the intent to injure. Now, under U.S. v. Lofgren, we were told that we must give meaning to every word included in the statute. The intent to prejudice and intent to injure are found on the face of the statute and fall outside the scope of generic forgery offense. Moving on to my second issue of why Mr. Moreno is not removable is that the statute is not divisible. But before establishing that, it is important to note that it is the government's burden on an issue involving removability to establish that a statute is divisible, and that was under matter of chairez. Nevertheless, the statute is not divisible, given the case law we have under de Comptes and Rendon, that tells us that a statute is only divisible if two requirements are met. First, that it lists separate and numerate offenses, of which a jury would be required to unanimously find beyond a reasonable doubt. The Court in Rendon further clarified this by stating that a statute is not divisible simply because it includes the words or, or is written in the disjunctive. Here in the Nevada Revised Statute, we have a very long paragraph that states a lot of separate ways in which to commit the same offense of forgery. A jury in Nevada would not be required to agree or disagree on whether there was an intent to prejudice, an intent to injure, or an intent to defraud. They would only need to find that they violated the statute for a person to be convicted of forgery. Let me ask you about the definition of forgery. So would, in your view, does obliteration, is that equivalent to the word destroy or destruction? The word obliterate, as we read it, yes. It's to be completely destroyed or to remove all traces of. So somebody had a promissory note or some kind of a bank note, and they, and it was original, and it was genuine, and they put it in the shredder and destroyed it. That would be forgery under the statute, as you read it. That is correct. That is our understanding of that, Your Honor. So then one of the tensions, it seems to me, is with the Supreme Court's Duenas-Alvarez case, which basically says you do look to what the state actually does and how it actually defines it. And in Nevada, you have the Warner case, which actually says to have a forgery, you have to have a making, in effect, of an instrument. So how do we reconcile that part of the Supreme Court's jurisprudence with your citation to Grissel and related cases? Well, as I understand it, while the cases that the government cited to actually, was it Warner that you were referring to? The Nevada case. Yes. That the document is required to be false? It requires an actual making of a document. Okay. Well, the Warner case I actually don't have in front of me. I thought it was Winston that was required to be false. I'm sorry. You know what? You're totally right. Yes. It was a W case. Yes. Not that part right. Yes. Well, the Winston case that the government cited for, they cited it for the, however, dealt with prosecution under 205.100 and did not deal with the statute that we're dealing here with today. So the specific language was never analyzed under that situation. And under Duenas-Alvarez, while there does need to be a reasonable probability, as stated in our brief, U.S. v. Grissel states that if a statute is overbought in its face, we may rely on the language alone. And given that Nevada case law is pretty sparse in the matter, Section 205.090 includes on its face other intents that are not found in the generic forgery offense. Well, you'd have to admit that when somebody takes an original document and shreds it, the term forgery really doesn't come to mind, does it? It does not. That is correct. And that's the very argument that Mr. Murna is making today, that this falls outside the scope of what generic forgery was initially intended to mean. Well, no, but, I mean, in terms of reasonable prosecution, I just have you, is there a case in the United States that you've found where somebody's been prosecuted for destroying a document under the crime of forgery? No, Your Honors. I do not have a case on hand that I was able to find. But as I was relying primarily on what Grissel states and what in our 28-J letter where he said Chavez-Eliz sort of reiterated what U.S. v. Grissel said, that you can rely simply on the language of the statute if it's overbought. What if you had a document that had three people who signed it, and so you have three signature lines and you cut off the bottom one, so now we've only got two? Is that forgery when you obliterate part of a document? Well, under Nevada it says that you can take together of two genuine documents in a whole or in part and place them together to constitute forgery. I think what your argument is stating would be to take parts of genuine documents and connect them. No, we're not taking it. We're actually cutting off the bottom, you know, like let's just cut off the bottom here of the signature. Now I have a document with two signatures, not three. Would that be obliteration? I believe that would be an alteration. Obliteration would be the word alter is found as well in the statute and as well as obliteration. And if we look at those two terms together, obliterate would mean something along the lines of shredding, whereas I think what you're referring to would be an alteration. Couldn't obliterate mean if you black out? Would that obliterate something? Well, the definition that we have under Black Saw States would be to destroy, completely remove from existence. I still believe maybe blacking it out would still be an alteration. I don't quite understand your third argument, which is an intent to damage is more of an intent to defraud. Can you explain the difference to me? Aren't you always damaged when you're defrauded? Well, given that the word damage was not defined under 205.085 and we take its ordinary meaning given in the dictionary, the term damage is usually referred to cause physical harm to a person's body or person, whereas defraud is more along the lines of trying to deceive someone. And the word prejudice is more along the lines of causing harm to someone's legal rights or claims. So there are differences in the words when we give meaning to them. And given the fact that the Nevada Revised Statute includes these three words, they meant them to mean separate things. I don't think you can effectively argue that forgery means an intent to cause physical harm, do you? Physical damage? Can you give me an example of where a forgery would cause physical damage? Your Honor, I don't have one. What Mr. Rohn is primarily relying on is the intent to prejudice as being outside the scope of an intent to defraud. Okay. So give me an example of where prejudice wouldn't come from defrauding. The word intent to prejudice would not be an intent to defraud. How about if you gave somebody a false resume for a law clerk and got a judge to hire him? Wouldn't he be prejudiced by having an incompetent law clerk? Yeah, perhaps that would be to prejudice someone's, I guess, I don't know if they have a legal right or claim against to get a position. He'd be defrauded, too. I just don't understand the difference. If we're trying to understand the statutory, I mean, I just want to make a, you know, we have to be fair about it. We can't just nitpick the statutes. I would also argue that while the intent to prejudice is one leg that Mr. Moreno can stand on, there's also within the statute the use of genuine documents, which brings that. So this would just be one leg that he's. Let me ask you one other thing before you sit down. And it pertains to both your final argument and your overbreadth argument. Your due process argument was not raised before the BIA. True? Well, Your Honor, the due process is in terms of an immigration judge sort of has a duty to ask questions. And I would ask questions of an alien that's facing removal, and I'd actually point you to the administrative record at page 64 where an immigration judge asks Mr. Vasquez, which is part of the master calendar, whether he fears persecution or torture back in his home country. This is something that is not asked of Mr. Moreno. Right. But how did he preserve that in front of the Board of Immigration Appeals? His due process claim? Yes. Well, the Board of Immigration Appeals actually sort of affirmed the immigration judge's decision and made a citation to what forms of relief Mr. Moreno would have been eligible for. And the fact that the BIA raised this issue on their own puts the Board on notice that this is a claim that is sufficient to put them on notice. Did they ever use the phrase procedural due process? No, Your Honor. They did not use the word, that term. And what's your best argument that the categorical approach or your categorical attack on the statute was raised in his brief to the BIA? What's my best argument for that it's not a collateral attack? I mean, it's not in there. Well, Mr. Moreno, like I would reiterate that he was a pro se litigant. True. And given the fact that the immigration judge at multiple places in the record only indicates that the only issue before him is whether or not what he committed was an aggravated felony, couple this with the language that he's stating where at the administrative record at page 10 where he says, I did not create the circumstances to the check being forged. I only cashed a check. What he's and the leniency given under rescariola, it leads us to the same conclusion that what he's arguing is that he did not commit generic forgery and, therefore, not an aggravated felony. Okay. Thank you. We'll give you some time for a couple of questions. One question. He was picked up with some speeding ticket or something, was it? He had a speeding ticket and, therefore, would I notice he's still in custody. How long has he been in custody? He's been in, I believe it's been for over a year now, since 2008. Has anybody asked for bail? He's still in custody today. He hasn't, he wasn't given bail. I'm not entirely sure, but all I understand is that he's still in custody and he's in Atalanta right now after being transferred from Henderson, Nevada. Okay. We will give you time for about, do you have any further questions? Okay. Thank you. Thank you. Good afternoon, Your Honors. May it please the Court. My name is Jennifer Singer and I represent the United States Attorney General, the Respondent in this matter. I'd first just like to address the detention aspect. You inquired whether there was a bond posted. He was released, or he's eligible for release on a $10,000 bond, but he's not yet been able to post that, so for that reason he's still in custody. But he's had a custody review determination. Your Honors, none of the arguments that the Petitioner has presented today have been raised before the Board. They are thus not exhausted and the Court is without jurisdiction to review them as a result. So he was posted and he did say to the BIA that he didn't commit a crime that involved drugs, weapons, or violence in any way. What was the point of telling them that if he wasn't saying this is not the kind of a crime that's an aggravated felony? I could see that, but even construing that sentence liberally or his other statements in his administrative appeal brief to the fact that I didn't cash the check, I didn't commit forgery, even construing those liberally. That's one argument. I don't think it's sufficient. He didn't commit a crime. The other is that he wasn't committing an aggravated felony because he wasn't committing a crime involving drugs or weapons or violence. I don't think that was sufficient to put the Board on notice to address the categorical approach. It just is more of a collateral attack on the underlying facts of the crime, which is impermissible. What would be the relevance of it if it didn't have to do with the aggravated felony? Because it doesn't have anything to do with his forgery per se. Just essentially saying that he perhaps doesn't fit the type of nature of something that would make him removable, but not specific enough. Because it's not an aggravated felony. In the Vizcara-Ayala case, the Court found that the aggravated felony issue was exhausted, where the Vizcara-Ayala raised the issue of an aggravated felony to the Board, although he kind of framed it in kind of incorrect terminology. This Court found that the Board was still on notice of the aggravated felony removability issue, and the Court found that in addition to being on notice, the Board in its decision specifically concluded that that crime was an aggravated felony. Here, the Board did not make such a finding. The Board specifically said that the Petitioner did not meaningfully contest the aggravated felony ground of removability and did not address the merits of it. So what's the difference between a meaningfully contest and a contest? Something more than just generic arguments that I didn't commit the underlying crime or my crime didn't have to use guns or drugs. Something more specific. Yeah, I mean, it's odd phrasing because if he didn't contest it, it has one consequence saying he didn't exhaust it. If he didn't meaningfully contest it, that means he didn't adequately contest it, but he did contest it, which has a different procedural consequence, it seems to me. That's correct. I mean, from my perspective, I don't think he contested it at all. But from the Board's perspective, I guess he didn't meaningfully contest it. But there's so many aspects to argue the whole aggravated felony categorical approach that it's the Board, without some meaningful ground on which to ---- Maybe we ought to hold the Board to that same standard. And they should have said he didn't contest it when they say we didn't meaningfully contest it, meaningfully contest it. Maybe they were as inept as this pro per was, pro se plaintiff or petitioner. I mean ---- Maybe they should have said it absolutely accurately and clearly so we could understand it, what they meant. And we wouldn't have to say what do they mean by meaningfully contest. Maybe the Board should have been more clear, but again, there's so many aspects for which to challenge. We expect the pro se petitioner to be. Well, you've taken the position that if there's any doubt about this, the government wants a remand to the BIA. Is that your primary position on if there's any doubt about exhaustion of this issue? That's a kind of nuanced answer to that question, and it's a yes and a no. If this Court were to find that that aggravated felony ground of removability was exhausted before the Board, we would argue that the Court should affirm the agency's finding that the Nevada statute is a crime of forgery in terms of that it doesn't require a genuine document, but then remand to the Board to decide the issue in the first instance of the intent aspect and the relating to aspect, because, again, I'd like to underscore the point of exhaustion is that the Board or the IJ never had an opportunity in the first instance to address the whole intent aspect or the relating to language of the statute. The immigration judge only addressed whether the Nevada statute incorporated genuine or fictitious documents. But if you go to that issue, which is a pure legal issue as to whether the statute is broader than the generic forgery, what Mr. Moreno-Avendado's counsel has focused on is the obliteration, which, you know, give the example of a document which is totally destroyed, basically. So you're not actually forging, as we think of forging, not writing something false or making a false document. Why wouldn't that be broader than the generic crime? I don't believe it is broader. Obliteration, by the definition that I looked up, includes blotting out, scratching out, crossing out, making something indecipherable, cutting something up. That, by its very virtue, means an alteration of a document, the destruction of a document, to affect the genuineness of it. And the forgery ---- But if you completely throw it away, it doesn't exist anymore, and then it says, oh, best evidence, where's the document? I don't know. We don't have a document. So why is that forgery? I mean, I can understand we're doing part of it and blacking out and that sort of thing would be possibly forgery. But if it could include actually just like flat-out destruction, how does that fit into the making of a forged document? I don't think. There's also the Duenas-Elvarez test that we discussed a little bit earlier, that there has to be a reasonable possibility that someone would be prosecuted for that. And under my review of the case law and petitioner filed a 28-J citing that doctrine, and they could point to no case law in Nevada, which under some similar circumstance that someone would ---- there would be a reasonable ---- that someone has been prosecuted for that or that there would be even a remote reasonable possibility that someone would be prosecuted for that conduct. So in that sense, I wouldn't say it's overbroad. I kind of agree with you in principle. But then there's this Ninth Circuit case, Grissel, that basically says if the statute is language makes it broader, you don't have to go any further to see if there really would be a prosecution or whether it would be realistic. So what do we do with Grissel and follow-on cases that say you just can look at the statute if the language is clear on its face? Then to that point, then I would say that if the court didn't find that to be categorically a match between the language of the Nevada state statute and the generic definition of forgery, then, again, this issue is not exhausted, but it was the government's position that, nevertheless, Nevada forgery is a crime relating to forgery. Under the Drake's case, which the Third Circuit discussed, even though at bottom forgery requires a altered or a non-genuine document. And under the Drake's case, which discussed a Delaware forgery statute, it found that that Delaware statute was a crime relating, was a forgery crime relating to forgery because even though the intent aspects were overbroad or certain other aspects were overbroad, it was still a crime relating to forgery. And I would say that the Nevada statute, the way it's set out, is a crime relating to forgery. And with that, you had asked for a remand possibly on that point? And I was just curious, since that would seem to be a legal determination, why you would want a remand on that point? I would say to that is that the immigration judge only addressed the aspect of whether Nevada required a genuine or a fictitious document. And it never, because of the exhaustion issue and the petition never raised it, the board or the I.J. never addressed the intent aspects or the relating-to aspects of a crime of forgery. And I would, it's the government's position that if the court were to find otherwise, that it should be remanded to the board and the I.J. to have the opportunity to address that aspect of the INA in the first instance. Let me ask you a question. You know, this is a conviction for which he served 42 days, I think. He's been in this country for about 30 years. He was here, brought here at the age of 1. That's correct. His whole family is here. Is it, am I correct that the government was not interested in sending this case to mediation? We had some conversations, and our office consulted with DHS, and there are some other convictions that this court is not aware, and for those reasons, alternatives to litigation were not, DHS and the government did not find alternatives to litigation appropriate in the case. And I assume is that the reason for detention? I'm sorry, for the what? For his being detained. I mean, if you look at the face of this record, the question is why is he being detained at all? I believe he's being detained because if you're charged with an aggravated felony, that's mandatory detention, and he has had an opportunity to review that, and he's been afforded a $10,000 bond, but unfortunately has not been able to post that, so. And if we remanded, how much longer is he going to stay in jail for avoiding the total process going back to the BIA again and back to us again? Presumably until he posts bond or unless he goes back for another custody determination and asks for a lower bond or some alternative relief. Okay. Let me return to one legal question. Do you believe the Nevada statute is divisible? I do not believe it's divisible. Very good. Any further questions? All right. Thank you. I just, I see one minute left. I could just briefly. You're actually a minute over about our question. Oh, I'm sorry. We'll let you go. The relief issue, that also is not exhausted, and based upon the circumstances that were presented to the IJ, the IJ, no duty arose for the immigration judge to discuss withholding of removal and cap protection. Petition made no claims of fearing returning to Mexico, other than the fact that he had no family members there. So no duty arose for the IJ to go down that path of relief. The facts presented were post-conviction relief, cancellation of removal. He had U.S. citizen relatives and LPR relatives, and that was the path that the immigration judge went down with him, and that was the only thing that, the relief that was triggered based upon petitioner's case. So thank you very much. Thank you. We'll give you two minutes. Thank you. I'd just like to address the point that the counselor just made about Mr. Moreno having other convictions. We're not actually aware of any other convictions that Mr. Moreno has. But onto the other point that we're trying to make is, you were discussing earlier why Mr. Moreno was discussing the underlying facts of whether or not he committed an aggravated felony, and it's the fact that the immigration judge kept referring to Mr. Moreno of post-conviction relief and how he could address that issue. Given the fact that Mr. Moreno is unrepresented, it's conceivable or plausible how he could conflate this issue of post-conviction relief and whether or not what he committed was an aggravated felony. Like I said, it's very difficult to hold a pro se litigant to understand the intricacies of immigration law. I'd like to reiterate the fact that a document, when it's being obliterated, it can't be erased because that would be superfluous. The fact that the Nevada Revised Statute includes words such as erase within the 205.085 and the words obliterate and alter, it means that erase and obliterate would be two separate, two separate meanings that we must give them deference to. They erase or obliterate in whole or in part. I'm sorry, Your Honor. Could you repeat the question? It wasn't really a question. Okay. And as to the one final point I wanted to establish is that because the Nevada case law is sparse, and as Judge McKeon was referring to, if there's no case law and the government can't point us to case law as it is their burden, then under Chavez-Elise, then the statute should be enough. And on that, we'd like to submit. Thank you, Counsel. Thank you. And I want to thank Santa Clara for the pro bono representation. It's very much appreciated. And thank you for coming out from D.C. for the argument. The case will be submitted for decision, and we'll proceed to the last case on the oral argument calendar today. The United States v. Nassau.
judges: Thomas, Reinhardt, McKeown